George Andeews, J.,
delivered the opinion of the Court.
The bill in this cause was filed in the Chancery-Court of Memphis, and the following facts are established in the case:
On the 17th day of June, 1848, the defendant Ann A. Kesterson, with John Kesterson, her husband, executed and delivered to Ann S. Keeling, a deed of conveyance of lot Ho. 356, in the . City of Memphis, said lot being the individual property of Mrs. Kester-son. Said lot was afterwards conveyed to Robertson Topp, who sold it to M. J. Wicks, E. W. Munford, W. B. Greenlaw and J. O. Greenlaw; through whom, complainant, Mount, claims title to a portion of the lot. .
On the 6th of Jüne, 1866, the defendant, Ann H. Kesterson, her husband being deceased, or reported to be so, commenced an ejectment against Mount, for the recovery of that portion of the lot held by him.
Her claim to recover the lot, is’ based upon the alleged fact that the certificate of her privy examination and acknowledgment, annexed to the deed of her *454 self and husband, to Mrs. Keeling, is defective, and not such as is required by law; and it is claimed that, in consequence thereof, the deed is ineffectual and void as to her.
The bill alleges these facts, with others not necessary to be stated here, and prays that the suit in ejectment be perpetually enjoined; that the said lost deed be set up and established; and that, if necessary, the title to said lot be divested out of Mrs. Kester-son; and for general relief. The original deed of Mrs. Kesterson and her husband, has been lost, and a copy from the Register’s office is exhibited with the bill.
The answer of Mrs. Kesterson, admits the making of the deed by her husband, and that a copy thereof is exhibited with the bill; and also admits, “that she signed the same, and that a futile effort was made to take the privy examination on the 17th of June, 1848; the said examination being nugatory, because the said Rose, deputy clerk, etc., omitted to recite and- show in the privy examination, and in his probate, that he was personally acquainted with respondent.”
Subsequently to the execution of the original deed by Mrs. Kesterson and her husband, a deed was executed by her, intended to confirm- the sale, and to remedy the supposed defect in the title. In the view which we have taken of the questions involved in the case, it becomes unnecessary to decide upon the effect of this deed of- confirmation, and our discussion will be confined to the effect and operation of the. original deed.
*455 Upon final hearing, the bill was dismissed by the Chancellor, and the complainant appealed.
Previous to the passing of the Act of 1833, ch. 92, all deeds of femes covert in this State, were required to be acknowledged by the feme upon a private examination before some court, or judge of a court, or in certain cases, before commissioners to be appointed by the court, to take the acknowledgment; and the only mode provided for the acknowledgment of any deed of real estate, was before some court, or judge, or commissioner. ,
The Act of 1831, ch. 90, introduced a material change in the system, by providing that deeds of persons sui juris, might be proven by witnesses or acknowledged by the grantors, before the clerk of any County Court. This act has no reference to deeds of married women. It is the first statute of this Statev which prescribes a form for the certificate of acknowledgment.
Under the provisions of all these statutes, however, deeds other than those of femes covert instead of being acknowledged by the grantor, might be proved by the subscribing witnesses before the proper court or officer, and a copy of the record of such probate endorsed.
The Act of 1831, provides, that where the person executing the instrument wishes to acknowledge the same, “it shall be lawful for any of said clerks to receive said acknowledgment, if he is personally acquainted with the person wishing to make said acknowledgment, but not otherwise; in which case he shall put on said deed the following certificate: ‘State of Ten *456 nessee, —:- County. Personally appeared before me— clerk, etc., the within named, (the bargainor, obligor, etc.,) with whom I am personally acquainted, and who acknowledged that he executed the within (deed, bond, etc.,) for the purposes therein contained.’ ” The Act also provides, for the probate of the deed by the testimony of the subscribing witnesses, instead of an acknowledgment; and prescribes a form of certificate of such probate to be indorsed upon the deed by the clerk taking such probate.
In 1883, was passed An Act, entitled “An Act to amend the Act of 1831, ch. 90.”
This statute provides, that, “all deeds of conveyance heretofore made, or hereafter to be executed, by husband and wife, may be proven by the subscribing witnesses thereto, or acknowledged before the clerk of any County Court in this State, which probate or acknowledgment of the due execution of said deed, by the said husband and wife, shall be made in the same manner; and the form of the certificate of such probate or acknowledgment, shall be the same as is pointed out in the said Act, which this is intended to amend: And it shall be the duty of said clerk, before whom said probate or acknowledgment is so taken, and after the said deed is so proven or acknowledged, to examine the wife privily and apart from her said husband, touching her voluntary execution of the same; and if she .acknowledges or states that she executed the same freely and voluntarily, and without any compulsion on the part of her said husband, then and in that case, the- said clerk, in addition to the certificate or. acknowledgment *457 prescribed in the aboye recited Act, shall also put the following certificate on the back of said deed: 'And A .B, (the feme covert,) having also personally appeared before me, privately and apart from her husband, the said -, acknowledged the execution of said. deed to have -been done by her, freely, voluntarily and understanding^, without compulsion or restraint from her said husband, and for the purposes therein expressed.’ ”
The statutes of 1831 and 1833,' were in force in this State at the time of the execution of the deed now in question.
The certificate of acknowledgment upon the copy of the deed in question, is as follows:
"State of Tennessee,
"Shelby County,
"Personally appeared before me, W. L. Dawoody, Clerk of the County Court of said county, John Kes-terson j and (Ann H. Kesterson having also appeared before me privately and apart from her husband, the said John Kesterson, acknowledged the execution of said deed to have been done by her freely, voluntarily and understandingly, without compulsion or constraint from her said husband, and for the purposes therein contained. "Witness my hand at office, June 17, 1848.
"WM. L. DAWOODY, Clerk.
“By James Rosé, D. C.”
It is admitted in this case, that the deed in question was executed by John Kesterson, the husband, and by Ann H. Kesterson the wife; but there is no certificate showing that the husband acknowledged it.
*458 It becomes necessary, therefore, to determine whether a deed executed by husband and wife, but acknowledged by the wife alone, is effectual to convey her estate; and if so, whether ’the omission of the clerk to state in his certificate, that he is personally acquainted with the grantors, is a defect which renders the deed totally invalid, as to her.
The Act of 1833, provides, that deeds of husband and wife, may be proven by the subscribing witnesses, or acknowledged before the clerk of the County Court; “and it shall be the duty of said clerk, before whom said probate or acknowledgment is so taken, and after the said deed is so proven and acknowledged as aforesaid, to examine the wife privily and apart, etc.”
That the husband must so join in the deed conveying the wife’s estate, as to make it, in substance, at least, the joint deed of husband and wife, is undoubted: Cope vs. Meeks, 3 Head; 388. Whether it is essential to the validity of the deed as to the wife, that the husband aohnowledge as well as execute it, is a different and more difficult question.
I think, however, that the statute in this respect, is directory. The clerk may take the probate or acknowledgment of the deed, as to the husband; and if he does so, it is his duty afterwards to take the privy examination of the wife. But if, in . any case, he should take the privy examination of the wife first, and the acknowledgment of the husband afterwards, or should take the examination of the wife Avithout any probate or acknowledgment by the hnsband, who had already executed the deed, it would, I think, be stick *459 ing in the bark of tbe statute to bold tbe whole proceeding void.
Judge Cooley, as tbe result of bis discussion of tbe subject of tbe distinction between directory and mandatory provisions in statutes, states, that: “Those directions which' are not of tbe essence of tbe thing to be done, but which are given with a view merely to tbe proper, orderly and prompt conduct of tbe business, and by a failure to obey which, tbe rights of those interested will not be prejudiced, are not commonly to be regarded as mandatory; and if tbe act is performed, but not in tbe time, or in tbe precise mode indicated, it may be still sufficient, if that which is done accomplishes tbe substantial purposes of tbe statute: Const. Lim., 77.
Tbe essential thing to be accomplished in effecting a' conveyance by femes covert, is tbe privy examination, whereby it is ascertained that her execution of tbe instrument was voluntary, free, and without fear, compulsion, or undue influence. This was tbe essential thing in a conveyance by fine in England; and in all tbe varying legislation upon this subject in this State, and in all tbe States of tbe Union, this has been tbe one primary object in view. "Whatever statutory" provisions have reference to tbe complete accomplishment of that object, and tbe protection of tbe feme covert, must be considered as mandatory. But general provisions . of tbe statute in regard to tbe mode of executing or authenticating such deeds, not having reference to this essential condition, need not be considered as manda *460 tory, unless' circumstances, or the obvious intent of the Legislature, so indicate.
It is hardly correct to say that the right of a feme covert to convey her lands, was conferred by statute, and that therefore her conveyance is invalid, unless executed in strict compliance with all the details of statutory requirement. Her right to convey existed at common law, though it could be exercised only by the process of fine or recovery. Those proceedings were never recognized in this State, or in the colony, or State of Worth Carolina, and perhaps not in any of the original thirteen colonies: 4 N. Y., 31; 3 Mason, 351. But deeds were executed by married women and authenticated in various modes, till the Worth Carolina statute of 1715, which is the foundation of our system, recognized and • regulated, rather than conferred the right. That statute in its preamble, recites as follows: “Whereas, the legal way of passing lands where the estate is in a feme covert, is, by fine and recovery; and it having been formerly practicable in this government, (fines and recoveries not being in use here,) that sales have been made by the husband with the wife’s consent, and sometimes by sales from them both, and acknowledged in court, the wife being first privately examined in court, whether she acknowledged the same freely: Be it enacted, etc.”
Such statutes are an enlargement of a common law right, facilitating its exercise, but not originating the right: 4 N. Y., 23.
*461 The deed is valid as to the husband, except as against creditors and bona fide purchasers upon execution and delivery merely, -without acknowledgment by him, or registration. So far as the estate of the husband in the wife’s land is concerned, no effect is given to the deed by his acknowledgment. “The reason why the husband was required to join with his wife in the conveyance, was, that his assent might appear upon the face of it, and to shew he was present to protect her from imposition:” Per McKinney, J.; 3 Head, 388. In the present case, the husband executed the deed with his wife, thereby shewing his assent upon the face of it; and he appeared with her before the clerk, as the certificate shows, thereby being in a position as efficiently to protect her from imposition, as if he had then and there, himself acknowledged it.
It is difficult to see why . the omission of an act on the part of the husband, not tending to the protection of the wife, and which, whether performed or omitted, could have no effect upon the passing of his estate, should so fatally effect the passing of hers.
The usual, convenient, and very proper practice, is, undoubtedly, for husband and wife to appear together before the proper officer, who takes on the same occasion, the acknowledgment of the one, and .the privy examination of the other. And it might be conceded that the statute was passed, as statutes often are, in contemplation of the existence of usual and ordinary facts, without rendering the existence of those facts absolutely essential to the validity of acts done under the statute.
*462 And I think it would be confining ourselves to a very narrow and technical construction, and grasping at the shadow, while losing the substance, to hold, in the present case, that, when the husband had executed the deed jointly with his .wife, and had appeared with her before the officer, and her privy examination and acknowledgment, had been duly taken and certified, the deed of the wife should be a nullity, because the husband failed to make an acknowledgement, which could have no effect upon the operation of the deed, as to him; which could shew no further than his acts had already shown, his assent to his wife’s conveyance, and which could not, in this case, or in any other, operate as a protection to the wife against fraud or imposition. To justify the court in holding such an apparently immaterial act, to be an absolute essential to the validity of a deed, should require a clear expression of a legislative intention to that effect.
But if it be settled that it is not essential to the validity of the deed of a feme covert, that the husband should acknowledge, as well as execute it; still, it is insisted, that, in virtue of the express terms of the statute, it is essential that the substance of the certificate prescribed by the Act of 1831, be prefixed to the certificate of the privy examination, and, in particular, that it should be certified by the clerk, that he is “personally acquainted” with the feme covert.
It has been repeatedly decided in this State, that, under these statutes, in the case, of a deed of a person mi juris, the certificate of acknowledgement is invalid, as an authentication for the purpose of registration’ *463 unless it shew that the clerk, taking -the acknowledgment, is personally acquainted with the grantor. But the effect of such omission upon the operation of the deed of a feme covert, has never, that I am aware of, been decided in this State.
The certificate in this case, it will be observed, omits the material portions of the certificate prescribed in the Act of 1831, but embodies a substantial copy of the form of certificate prescribed - in the Act of 1833, for certifying the privy examination and acknowledgment of femes covert. It contains no statement of any acknowledgment of the deed by John Kesterson, the husband, and no recital that the clerk was personally acquainted with either of the grantors.
It is well settled, in this State, as well as elsewhere, that the title of a feme covert, in real estate, passes only by virtue of her privy examination and acknowledgment, and that the certificate of the officer is the only evidence admissable to prove that the requirements of the law, in regard to such examination and acknowledgment, have been complied with.
Does the Act of 1833, require the whole of the certificate prescribed by the Act of 1831, as well as that of 1833, to be indorsed upon the deed, as an essential condition to the passing of the title of a feme covert f '
If my conclusion be correct, that the privy examination of the wife, and the certificate thereof, are. valid and effectual, though the husband has not acknowledged their joint deed, it almost necessarily follows, that the only certificate essential to the wife’s deed, is that *464 relating to her privy examination; and that the certificate prescribed in the Act of 1831, which is the only one containing the personal acquaintance clause, need not be prefixed to the certificate of the privy examination contained in the Act of 1833. For, it will at once be seen, that the certificate' of 1831, would be simply incoherent, if the husband’s name were not mentioned in it.
The Act of 1831, had no reference to deeds of married women. The certificate prescribed in that Act did not effect the operation of the deed as between the parties, but operated as evidence and authentication merely, for purposes of subsequent proof and registration. The Act of 1833, extended the powers of clerks of courts to the taking of acknowledgments of the deeds of married women, and prescribed a further certificate to be added to that prescribed by the former Act. But the certificate of 1831, retained by the Act of 1833, had, under both Acts, the same operation and effect; it was an authentication merely, of the deed, and had no reference to the privy examination of the wife.
It was the privy examination and acknowedgment, and the certificate thereof, which followed the first certificate, that operated upon the title of the feme eovert. Perhaps the first certificate might be essential to entitle the deed to be used as evidence, or to be registered; it certainly would be thus essential as to the interest of the husband; but it is the last certificate only, which contains the results of the privy examination, that was intended to have any effect upon the estate of the wife.
*465 I think the obvious intention of the Legislature in the Act of 1833, was, to provide for the full and complete authentication, as to both parties, of deeds executed by husband and wife, thereby supplying an omission in the Act of 1831. With this view, the Act of 1833, re-enacts the provisions of the previous statute; but the provisions thus re-enacted, have the same force and effect in the subsequent statute, as in the prior one; and in both statutes have reference to matters of evidence and registration merely. The new matter in the Act of 1833, consists of the provision made for taking and certifying the privy examination of the wife; and it is upon this, and not upon the provisions brought forward from the Act of 1831, that the validity of her conveyance depends.
This view is borne out by the consideration of some further provisions of this Act of 1833. It was provided that, when femes covert should be unable, for any cause, to appear before the clerk, he might issue a commissioni to a justice of the peace, or other officer, to take her privy examination. The forms of the commission, and of the certificate to be made by the commissioner, are prescribed in the Act; and neither of them contain any statement that the officer is personally acquainted with the feme; thus showing that the Legislature did not regard the personal acquaintance clause as of vital importance.
. Ho reason is seen why the Legislature should require the feme covert to acknowledge the deed twice— once in company with her husband, and once upon privy examination afterwards; and in Montgomery vs. *466 Hobsdn, and Rainey vs. Gordon, it was held that sbe was not required to do this, under the statute of 1813.
Mr. Meigs, whose admirable Digest has, in the absence of judicial decision, almost the force of authority in this State, treats the certificate of probate or acknowledgment prescribed by the Act of 1831, as applying only to the acknowledgment of the husband; and states, that after such probate or acknowledgment on the part of the husband, the feme may appear before the same, or some other County Court clerk, and acknowledge the deed and be privily examined at the same time or subsequently: 1 Meigs’ Dig., 587.
It is. true, that the Act of 1833, provides that the .probate or acknowledgment of the due execution of the 'deed by the husband and wife, shall be made in the same manner, and the .form of the certificate of such probate or acknowledgment, shall be the same, as is pointed out in the Act of 1831. But it is not said that the omission of the clerk to comply with this direction shall render the deed a nullity as to either husband or wife; and as the matter to be certified to, under these directions of the statute, is only the “due execution” of the deed, and not at all the privy examination, on which the validity of her conveyance depends; as this is matter which under all the legislation of the State, up to the passage of the Act of 1833, would have had no effect as to the validity of the deed of a feme., covert, and is utterly immaterial now, unless made absolutely essential to the validity of the deed by the express terms of the statute; it would be straining in favor of literal techni *467 cality, and sticking in the bark of a remedial statute, to hold that an omission in' this portion of the certificate, would render the deed as to the wife, wholly invalid.
Whatever forms or precautions are required by the statute, for the protection of the interests of femes covert must be kept and observed. But I am not disposed to add to these, useless technicalities, which can operate only to embarrass conveyancing, and would, if enforced, in most cases, simply operate a fraud or a wrong.
The conclusion is, that the Chancellor erred in dismissing the bill in this cause; that the deed executed by Mrs. Kesterson and husband, was valid, and operated to convey her estate in the land; and it mnst be so decreed.